U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 3 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KOREAN WAR VETERANS ASSOCIATION | CIVIL ACTION NO. 07-0690 |
| -vs- | JUDGE DRELL |
| FEDERAL INSURANCE COMPANY, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a motion for summary judgment (Doc. 19) filed by defendants Federal Insurance Company and Chubb & Son, Inc. and a motion to dismiss (Doc. 6) filed by Chubb & Son, Inc. Because we find that the claims of plaintiff Korean War Veterans Association are contractually time-barred, we GRANT the motion for summary judgment (Doc. 19) and DENY AS MOOT the motion to dismiss (Doc. 6).

## BACKGROUND

This is a suit by plaintiff Korean War Veterans Association ("KWVA") to recover under an insurance contract for theft by a former employee, John Maison. The theft took place for at least part of 1997 and several years previous. Both parties agree that Executive Protection Policy # 8145-38-48 ("the Policy"), issued by FIC to KWVA, was in effect during the relevant period.[1] Crime coverage under the Policy included "direct losses of Money, Securities, or other property caused by Theft or forgery by any

---

[1] The policy is in the record both as Exhibit B to the notice of removal (Doc. 1-5) and as Exhibit A to FIC's motion for summary judgment (Doc. 19-4). For purposes of this document, we reference the exhibit to the notice of removal (Doc. 1-5).

Employee of any Insured acting alone or in collusion with others." (Doc. 1-5, p. 13). In addition, the policy includes Paragraph 22 ("Notice-Proof Legal Proceedings") which reads in relevant part:

> Upon knowledge or discovery by a proprietor, partner, officer or Insurance Representative of any Insured of loss or an occurrence which may become a loss, written notice shall be given the Company at the earliest practicable moment, and in no event later than ninety days after such discovery. Within four months after such discovery the Insured shall furnish to the Company affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of **two years from the discovery of such loss** . . . .

(Doc. 1-5, p. 20) (emphasis added).

The record is unclear as to exactly when KWVA uncovered the theft by its employee, but the earliest indication is a letter dated June 30, 1997 from Robert C. Butler, with KWVA, to Greg A. Ray, bond claim attorney for Chubb Group of Insurance companies,[2] referring to "the inability to finalize the claim for the 1996-1997 policy period" and "the inability to document information for claims the Insured wishes to file for the 1994-1995 and 1995-1996 policy period" and requesting advice on how to "proceed with the documentation issue." (Doc. 25-3, Doc. 25, p. 5). FIC granted KWVA several extensions of time to file their proof of loss and other documentation, being careful at the outset to alert the KWVA that it "expressly reserves all rights as provided under the Policy and at law and neither this letter **nor any subsequent investigation or inquiry** is deemed to be a waiver of any of the Policy terms or conditions." (Doc. 25-5) (emphasis added).

---

[2] The parties agree that Chubb is affiliated with FIC, and for purposes of this analysis Chubb's actions are imputed to FIC.

KWVA filed a claim on October 28, 1997 for documented claims totaling $138,451.79, plus tentative and estimated claims totaling up to $175,010.64, while reserving its right to file a claim for up to $25,000 more. (Doc. 25-6). KWVA supplemented this information on December 4, 1997 and continued to send letters regarding the matter to Chubb. (Docs. 25-7, 25-8, and 25-9). By letter dated June 3, 1998, FIC issued a check dated June 2, 1998 totaling $131,879.19 as partial payment of KWVA's claim, which KWVA accepted by letter dated June 17, 1998. (Doc. 25-11; Doc. 19-3, p. 2).

KWVA still disputed the amount of the claim and continued to communicate with FIC. In a letter from FIC to KWVA dated September 1, 2000, FIC stated that it would reopen the file and accept additional documentation on the claim. The letter did not include the reservation of rights language typically included in FIC communication. Following this letter, FIC did not agree to pay any more on the claim, and the last communication in the matter is dated June 25, 2002.

On March 14, 2007, KWVA filed suit in the Ninth Judicial District Court of the State of Louisiana against FIC and Chubb & Son, Inc. for failure to pay the claim under the terms of the Policy. The defendants removed to the Western District of Louisiana on April 19, 2007 on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and filed the motion for summary judgment (Doc. 19) now before us. Defendants assert that because KWVA failed to bring suit within two years after discovery of its loss, the claim is contractually

time-barred.³ In response, KWVA admits that the claim is time-barred on its face but argues that FIC induced KWVA "into not filing suit due to Federal's continued contacts and consideration of the plaintiff's case over a long period of time and well past the prescriptive period contained in the policy," and/or FIC waived the Policy's two year limitation period as evidenced by the September 1, 2000 letter reopening the claim file for consideration of additional documentation. We address these arguments below.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are

---

³ Both parties speak in terms of prescription, but the issue before us more precisely involves a contractual limitations period. See La. Civ. Code art. 3457 ("There is no prescription other than that established by legislation.")

insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

## ANALYSIS

### A. Limitation Period

"In the absence of conflict with a statute or public policy, insurers have the same rights as individuals to limit their liability and impose whatever conditions they desire upon their obligations. The insurance policy establishes the limits of liability, and that policy is the law between the parties. " Sims v. Mulhearn Funeral Home, Inc., 956 So. 2d 583, 595 (La. 2007) (citing Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 583 (La. 2003)) (internal citations omitted). In Magnolia Management Corp. v. Federal Ins. Co., 2007 WL 4124496 (W.D. La. 2007), we analyzed a limitation clause virtually identical to the one in the Policy here ("Legal proceedings for recovery of any loss hereunder shall not be brought after the expiration of two years from the discovery of such loss . . . .") and held that it does not violate public policy. Id. at *4.

With respect to dating "the discovery of such loss," we held in Magnolia Management that "[t]he proper focus should be the first point at which the insured knows the identity of a wrongdoer and the actions which may subject the insured to loss or liability," even if the insured does not know the extent of that loss. Id. at *7. Here, it is clear from the record that KWVA had discovered both the identity of the wrongdoer and the actions triggering the possibility of loss, i.e., the employee theft, at least as early as June 30, 1997, the date of a letter from KWVA to Chubb discussing the claim. (Doc.

25-3).[4] Using June 30, 1997 as the date of discovery, KWVA's claim was time-barred by July 1999. KWVA did not file suit until March 14, 2007. Thus, as FIC asserts and KWVA agrees, KWVA's claim appears to be time-barred on its face, shifting the burden to KWVA to prove otherwise. (Doc. 25, p. 9).

### B. September 1, 2000 Letter as Waiver of Contractual Rights

KWVA argues that FIC waived the contractual limitation right in two ways: first, in the September 1, 2000 letter reopening the claim file for consideration; and second, through FIC's pattern of reconsidering the claim from 1997 to 2002. These arguments are without merit, and we will address them separately. We will refer extensively to the Louisiana law of prescription, as it provides the appropriate analysis for the issues raised by this contractual limitation period. To explain why the September 1, 2000 letter did not waive FIC's contractual limitation right, it is useful to explain exactly what is required to renounce prescription and what happens to an obligation that is extinguished by prescription.

"Prescription may be renounced only after it has accrued." La. Civ. Code art. 3449. "Renunciation may be express or tacit. Tacit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned." La. Civ. Code art. 3450. In the insurance context, La. R.S. § 22:651 ("Claim administration not waiver") provides in full:

---

[4] In actuality, KWVA evidently discovered the theft prior to that date, as the letter appears to be part of ongoing correspondence regarding the claim. Since this is the earliest date of record, however, and an earlier date would strengthen rather than weaken our analysis, we will use June 30,1997 as the date of "discovery of such loss."

> None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
>
> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.
>
> (2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incompleted.
>
> (3) **Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.**

Id. (emphasis added).

A civil obligation, such as the obligation to pay an insurance claim, does not simply die when it is extinguished by prescription; it becomes a natural obligation under La. Civ. Code art. 1762. "A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." La. Civ. Code art. 1760. "A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed. A contract made for the performance of a natural obligation is onerous." La. Civ. Code art. 1761.

As we have already noted, the limitation period ran under the terms of the policy by July 1999, converting FIC's civil obligation to pay any claim under the terms of the Policy into a natural obligation. By definition FIC still had a moral duty to honor the terms of the obligation, but KWVA lost the ability to judicially enforce the obligation. The practical upshot is that from July 1999 forward, KWVA had two possibilities for

recovering under the Policy: (1) FIC could freely perform the time-barred obligation and could not reclaim any amounts so paid, but KWVA could not judicially demand performance, or (2) FIC could waive its contractual limitation right (analogous to renouncing prescription), allowing KWVA once more to judicially demand performance. KWVA argues that the September 1, 2000 letter waived the contractual limitation right, but as a matter of law, it did not. At best the letter represents merely a discussion of possible performance on a natural obligation. The letter reads in part:

> Following Greg Ray's letter to you of March 8, 2000, we agreed to **re-open** the file and **consider any additional documentation** to support this claim.
> . . .
>
> As you know, Federal Insurance Company has partially settled this matter with the Korean War Veterans in the amount of $131,879.19. Should you wish to provide **documentation to support an additional claim**, please feel free to do so. Pursuant to the above-referenced policy, an insured has **four months from the date of discovery of a loss to submit their Proof of Loss**. We have been very accommodating throughout this claim in extending this deadline on numerous occasions. We are once again willing to provide you with a reasonable time period to provide documentation to support an additional claim. As your policy provides an initial four month period to gather information, we are willing to provide you with an **additional four months** from the date of this letter to submit a **supplemental Proof of Loss**. If you cannot meet that deadline, please call me to discuss a suitable alternative date.

(Doc. 25-13, p. 2) (emphasis added).

Paragraph 22 of the Policy sets out several time periods that KWVA must follow for any claim. The three most relevant are the 90 day period in which to notify FIC after discovery of loss; the four month period in which to file a proof of loss on a claim; and the two year period after discovery of loss in which to bring legal proceedings. (Doc. 1-5, p. 20). The September 1, 2000 letter, by its very terms, extends <u>only</u> the four month period

for filing a proof of loss, allowing FIC to consider the claim internally. It does not and, given the content of the letter, need not even mention the 90 day initial period or the two year limitation period.[5]

Significantly, the letter speaks of reopening the claim file and considering "documentation to support an additional claim" and a "supplemental Proof of Loss." This language, construed in the light most favorable to KWVA, suggests nothing more than an offer to continue "[i]nvestigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim" and so is insufficient to waive the contractual limitation right under La. R.S. § 22:651. It clearly is not an express waiver of the right, as KWVA argues, because it does not discuss the two year limitation period at all. Nor is it a tacit waiver, because the circumstances, reconsideration and investigation of a claim, do not waive the Policy's limitation clause under La. R.S. § 22:651 and so would not "give rise to a presumption that the advantages of prescription have been abandoned." La. Civ. Code art. 3450. Cf. Farm Credit Bank of Texas v. Fireman's Fund Ins. Co., 822 F.Supp. 1251, 1255 (W.D. La. 1993).

KWVA's argument seems to be that the letter would have no purpose if it did not waive the contractual limitation right. However, because KWVA's time-barred claim was a natural obligation by September 1, 2000, FIC's promised reconsideration of the claim involved only a moral duty, not a legal duty. Under the terms of the Policy, which would otherwise have barred FIC's own reconsideration of the claim, FIC would

---

[5] Because the letter concerns only supplemental proof relating to the original claim of which FIC had timely notice, the letter need not discuss the 90 day period for initial notice. The limitation period was unnecessary to discuss for reasons set out below.

necessarily have to extend the four-month proof of loss period to allow itself to reconsider the claim internally. That is exactly what FIC did. Nothing from the circumstances suggests that FIC intended to waive its right to enforce the two year limitation period, since that period would bar only <u>judicial</u> consideration of the claim. As a matter of law, the letter does not constitute a waiver of the contractual limitation right.[6] Thus, KWVA's arguments relating to the September 1, 2000 letter are without merit.

### C. Pattern of Reconsideration as Inducement Not To Sue

KWVA next argues that even if the September 1, 2000 letter did not waive the contractual limitation right, FIC's pattern of extending documentation deadlines and agreeing to reconsider the claim operated to induce KWVA into not filing suit and thus somehow operated to waive this right, presumably under the doctrine of <u>contra non valentem agere nulla currit praescriptio</u> ("<u>contra non</u>"). This argument must fail in this case. <u>See</u> <u>Webb. v. Blue Cross Blue Shield of La.</u>, 711 So. 2d 788, 791 (La. App. 1 Cir. 1998) ("But the insured's ignorance of his rights alone is not enough to trigger <u>contra non</u>. The insured must also prove the insurer committed some act, such as concealment, fraud, misrepresentation, or other ill practice, that tended to impede or prevent the

---

[6] Remember that previous correspondence stated that FIC "expressly reserves all rights as provided under the Policy and at law and neither this letter nor any subsequent investigation or inquiry is deemed to be a waiver of any of the Policy terms or conditions." (Doc. 25-5). Because the reconsideration contemplated by the September 1, 2000 is "subsequent investigation or inquiry," it would probably fall under the past reservation of rights language even if it was not covered by La. R.S. § 22:651. However, our analysis here applies even in the absence of <u>any</u> prior reservation of rights. As a matter of law, we hold that the September 1, 2000 letter did not waive the contractual limitation right.

insured from asserting his cause of action. Mere negligence or inadvertence on the part of the insurer is insufficient.") (footnotes omitted).

In support of its argument, KWVA argues that the partial payment led KWVA to believe that FIC would continue to work with it. Partial payment of a claim within the limitation period could not renounce prescription, since prescription may only be renounced after it has accrued. La. Civ. Code art. 3449. Similarly, the partial payment did not waive the limitation period before it has run. At best, the partial payment could interrupt prescription as an acknowledgment of the debt. La. Civ. Code arts. 3464 and 3466; Gordon v. Schmidt, 20 La. Ann. 427 (La. 1868); Holmes Co. v. Hiller, 7 La. App. 590 (La. App. Orleans 1928). However, even if we could somehow start a fresh two year limitation period with the partial payment in June of 1998, the new limitation period would have run in June of 2000. Thus, the partial payment is irrelevant at this point.

Next, KWVA points to three letters offering reconsideration of the claim, dated September 1, 2000 (Doc. 25-13), March 19, 2001 (Doc. 25-14), and June 25, 2002 (Doc. 25-16). KWVA argues that "[t]his inducement was willful and negligent on the part of Federal, as it knew, or should have known, that it would give KWVA a false sense that it was unnecessary to file suit." (Doc. 25, p. 10). This argument must also fail, given that at the time the letters were sent, it was not only unnecessary to file suit but futile to do so. The limitation period ran no later than July 1999, well before these letters were sent. Thus, later letters could not affect the limitation period.

11

## SUMMARY AND CONCLUSION

FIC asserted in its motion for summary judgment that KWVA's claims are time-barred on the face of the complaint, and KWVA rightfully agreed, so the burden shifted to KWVA to prove that its claims are not barred. KWVA has failed to do so. The relevant record in this case is clear, revealing that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law.

Accordingly, the motion for summary judgment (Doc. 19) filed by defendants Federal Insurance Company and Chubb & Son, Inc. is GRANTED, and all of the plaintiff's claims are DISMISSED WITH PREJUDICE. Consequently, the motion to dismiss (Doc. 6) filed by defendant Chubb & Son, Inc. is DENIED AS MOOT.

SIGNED on this 23rd day of January, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE